Matter of Chaloeicheep v Hanrahan (2021 NY Slip Op 01765)





Matter of Chaloeicheep v Hanrahan


2021 NY Slip Op 01765


Decided on March 24, 2021


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on March 24, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

CHERYL E. CHAMBERS, J.P.
LEONARD B. AUSTIN
ROBERT J. MILLER
PAUL WOOTEN, JJ.


2020-05223
 (Docket Nos. V-30530-16, V-32119-16)

[*1]In the Matter of Adam Chaloeicheep, respondent,
v
Alicia Hanrahan, appellant. (Proceeding No. 1.)
In the Matter of Alicia Hanrahan, appellant,
v
Adam Chaloeicheep, respondent. (Proceeding No. 2.)


 Lauri Gennusa, Laurelton, NY, for appellant.
The Law Firm of Brian D. Perskin & Associates, P.C., Brooklyn, NY, for respondent.



DECISION & ORDER
In related proceedings pursuant to Family Court Act article 6, the mother appeals from an order of the Family Court, Kings County (Robert D. Mulroy, J.), dated May 28, 2020. The order, insofar as appealed from, after a fact-finding hearing, granted that branch of the father's petition which was for residential custody of the parties' child and denied that branch of the mother's petition which was for residential custody of the child.
ORDERED that the order is reversed insofar as appealed from, on the facts and in the exercise of discretion, without costs or disbursements, that branch of the mother's petition which was for residential custody of the parties' child is granted, that branch of the father's petition which was for residential custody of the child is denied, and the matter is remitted to the Family Court, Kings County, (1) for the entry of an order directing the father to transfer physical custody of the parties' child to the mother within 30 days of the date of this decision and order, and (2) to establish an appropriate parental access schedule for the father.
The parties, who never married, resided together in an apartment in Brooklyn from June 2015 to September 2016. Neither party has family in New York City, except for the paternal grandmother, who spends part of the year in New York City and part of the year in Thailand. The mother's family is primarily located in upstate New York.
The parties' child was born in August 2015. Shortly after the child's first birthday, the mother left the parties' apartment on September 10, 2016, with the father's knowledge, and took the child upstate to the maternal grandfather's home. The parties sharply disputed whether the move was initially intended to be temporary or permanent.
Beginning in late September 2016, the father visited with the child every other weekend, with either the father going to the maternal grandfather's home in upstate New York or the mother and the child traveling to Brooklyn. The parties agreed that on the weekend of December [*2]9, 2016, they would meet halfway, in Poughkeepsie, to exchange the child, and the father would have his first weekend alone with the child in Brooklyn. It was also understood that the father would meet the maternal grandfather in Albany on December 12, 2016, to return the child. However, during that weekend, the father decided not to return the child as planned and, without informing the mother, kept the child in Brooklyn and filed a custody petition, falsely alleging that he was the child's primary caregiver and that the mother was not communicating with him. When the father later informed the mother that he was not returning the child as planned, he falsely told her that he had been granted temporary custody and that she would be arrested if she came to Brooklyn to see the child. The mother immediately drove to Brooklyn and attempted to see the child, but the locks to the father's apartment had been changed. Police intervention was necessary to enter the apartment to perform a wellness check. Thereafter, the mother filed a custody petition.
After a lengthy fact-finding hearing, the Family Court awarded the parties joint legal custody, with primary residential custody to the father in Brooklyn. Although the court found that the father's actions on December 12, 2016, evinced a "willingness to make material misrepresentations in his sworn pleading" and "to use deception for advantage," and "were clearly contrary to the child's best interests," the court nevertheless concluded that "there is nothing in the record to show that one party is a better parent than the other" and that both "appear to be equally fit and capable of meeting [the] child's needs." Thus, the court distilled the resolution of this complex custody case to determining "where the child should live," and ultimately decided that it was in the child's best interest to reside in Brooklyn. The mother appeals, and we reverse.
Because the Family Court's determination is largely dependent upon an assessment of the credibility of the witnesses and upon the character, temperament, and sincerity of the parents, its determination should not be disturbed unless it lacks a sound and substantial basis in the record (see Matter of Guiracocha v Amaro, 122 AD3d 632; Matter of Dobbins v Vartabedian, 304 AD2d 665; Matter of Coakley v Goins, 240 AD2d 573). However, an appellate court would be seriously remiss if, simply in deference to the finding of a trial court judge, it allowed a custody determination to stand where it lacks a sounds and substantial basis in the record (see Matter of Guiracocha v Amaro, 122 AD3d 632; Matter of Shannon J. v Aaron P., 111 AD3d 829; Matter of Grisanti v Grisanti, 4 AD3d 471; Matter of Gloria S. v Richard B., 80 AD2d 72).
In an initial determination of residential custody, the relevant issue is whether it is in the best interests of the child to reside primarily with the mother or the father (see generally Eschbach v Eschbach, 56 NY2d 167, 172-174). In determining an initial petition for child custody, the court must consider, among other things, "(1) which alternative will best promote stability; (2) the available home environments; (3) the past performance of each parent; (4) each parent's relative fitness, including his or her ability to guide the child, provide for the child's overall well being, and foster the child's relationship with the noncustodial parent; and (5) the child's desires" (Matter of Supangkat v Torres, 101 AD3d 889, 890). Viewing the totality of the circumstances, particularly the past performance of the father, we find—all other things being roughly equal—that the child's best interests would be served by awarding the mother residential custody in upstate New York and awarding the father liberal parental access.
Accordingly, the Family Court should have granted that branch of the mother's petition which was for residential custody of the child and denied that branch of the father's petition which was for residential custody of the child. We therefore remit the matter to the Family Court, Kings County, for the entry of an order directing the father to transfer physical custody of the child to the mother within 30 days of the date of this decision and order, and to establish an appropriate parental access schedule for the father.
In light of our determination, we need not reach the mother's remaining contentions.
CHAMBERS, J.P., AUSTIN, MILLER and WOOTEN, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court